UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

- against -                                    **MEMORANDUM & ORDER**
                                                19-CR-100 (PKC)
KHAWAJA MUHAMMAD FAROOQ,

                Defendant.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

On February 21, 2020, the Court denied Defendant Khawaja Farooq's *pro se* motion to withdraw his guilty plea on the record in open court. The Court now sets forth the bases for that denial.

## I. Procedural History

On June 3, 2019, Defendant Khawaja Farooq pled guilty to Count Two of the Indictment pursuant to a plea agreement with the government. (*See generally* Guilty Plea Transcript ("Tr.").)[1] On December 2, 2019, Defendant's then-court-appointed counsel, Mia Eisner-Grynberg, Esq. and Allegra Glashausser, Esq. of the Federal Defenders of New York, moved to withdraw (Dkt. 42), which the Court granted on December 4, 2019 (*see* Dec. 4, 2019 Order). The next attorney appointed by the Court, Steven Brounstein, Esq., was also permitted to withdraw after he explained that he believed that he could not ethically file a motion to withdraw the guilty plea, as was being requested by Defendant. (*See* Dkt. 44; Dec. 23, 2019 Minute Entry.) The Court then appointed a third attorney, John Kaley, Esq., to represent Defendant; when Mr. Kaley similarly concluded that he could not ethically file a withdrawal motion on Defendant's behalf, the Court relieved Mr.

---

[1] The Guilty Plea Transcript is not available on the Docket.

1

Kaley as Defendant's attorney, except to serve in a limited advisory and ministerial role as shadow counsel. (Dkt. 45; Jan. 10, 2020 Minute Entry.)

On January 17, 2020, Defendant filed his *pro se* motion to withdraw his guilty plea. (Defendant's Motion ("Def.'s Mot."), Dkt. 46.) After construing Defendant's motion as requesting an evidentiary hearing, the Court denied that request, but ordered Ms. Eisner-Grynberg to submit an affidavit in response to Defendant's allegations (*see* Jan. 24, 2020 Order), which she did, under seal and *ex parte*,[2] on January 28, 2020 (Eisner-Grynberg Affidavit ("Eisner-Grynberg Aff."), Dkt. 47).[3] The government responded to Defendant's motion on February 14, 2020. (Government Response in Opposition to Motion to Withdraw Plea ("Gov't Resp."), Dkt. 48.) The Court held oral argument on February 21, 2020, at the conclusion of which the Court denied Defendant's *pro se* motion to withdraw his guilty plea. (*See* Feb. 21, 2020 Minute Entry.) The Court also found, at oral argument, that Defendant's repudiation of his prior statements made during the plea hearing, admitting his guilt, were not credible.

---

[2] The Court permitted the affidavit to be filed under seal and *ex parte* in order to protect Defendant's attorney-client privilege at least until the Court determined whether Defendant had waived that privilege, in whole or part, based on his disclosure of advice provided to him by Ms. Eisner-Grynberg and their privileged discussions, in support of his plea withdrawal motion. (*See, e.g.*, Def.'s Mot., Dkt. 46, at ECF 3.)

[3] "A defendant is not entitled to an evidentiary hearing as a matter of right whenever he seeks to withdraw his guilty plea." *United States v. Wolf*, 699 F. App'x 62, 63 (2d Cir. 2017) (summary order) (citation omitted) (finding no abuse of discretion in district court's denial of an evidentiary hearing because the court had "solicited affidavits from [defendant]'s two trial attorneys in order to rule on [defendant]'s motion to withdraw his guilty plea"); *see also United States v. Bishop*, 541 F. App'x 65, 66 (2d Cir. 2013) (summary order) (holding that district court acted within its discretion in not holding an evidentiary hearing before denying defendant's motion to withdraw his guilty plea because "[defendant]'s conclusory assertion of his innocence was belied by his statements made under oath during his plea allocution, which established that his plea was knowing, voluntary, and supported by a factual basis").

## II. Legal Standard

Federal Rule of Criminal Procedure 11 places "the burden of satisfying the trial judge that there are valid grounds for withdrawal" on a defendant who seeks to withdraw his plea. *United States v. Doe*, 537 F.3d 204, 210 (2d Cir. 2008) (internal quotation marks and citation omitted). A district court should primarily consider three factors: "(1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal innocence; and (3) whether the government would be prejudiced by a withdrawal of the plea." *Id.* (citing *United States v. Couto*, 311 F.3d 179, 185 (2d Cir. 2002)). "Where a motion to withdraw a plea is premised on involuntariness," a court should ask whether the defendant has "raise[d] a *significant question* about the voluntariness of the original plea." *Id.* (emphasis added) (internal quotation marks and citation omitted).

## III. Application

All of the relevant factors weigh against granting Defendant's request to withdraw his guilty plea.

### A. Delay Between Plea and Motion

Defendant pled guilty on June 3, 2019 (Tr. at 24:5–15) and submitted his motion to withdraw the guilty plea seven months later, on January 17, 2020 (*see* Def.'s Mot., Dkt. 46). Generally, in this Circuit, this lapse of time would usually be too long of a delay between the plea and the motion to suggest that the guilty plea was not entered voluntarily. *See United States v. Albarran*, 943 F.3d 106, 123 (2d Cir. 2019) ("The four-month lapse between his guilty plea and his motion to withdraw the plea further supports the District Court's exercise of discretion in denying [defendant]'s request."); *United States v. Wolf*, 699 F. App'x 62, 63–64 (2d Cir. 2017) (summary order) (affirming district court denial of motion for evidentiary hearing and withdrawal

of guilty plea, partly due to the half-year delay between defendant's plea and motion); *United States v. Gonzalez*, 647 F.3d 41, 55 (2d Cir. 2011) (affirming district court denial of motion to withdraw plea where there was a seven-month delay between the guilty plea and the motion to withdraw); *see also Doe*, 537 F.3d at 213 ("[T]he timing of the defendant's motion to withdraw his plea severely undercuts his argument that he pleaded guilty involuntarily. Whereas a swift change of heart may indicate a plea made in haste or confusion, the fact that the defendant waited five months to file his motion strongly supports the district court's finding that his plea was entered voluntarily." (internal quotation marks, alterations, and citations omitted)).

Here, Defendant sought to withdraw his guilty plea more than five months after its entry. Perhaps even more telling than the amount of time that passed is the timing of Defendant's efforts to withdraw his guilty plea. As previously discussed, Defendant pled guilty on June 3, 2019. He was released on bail immediately following his plea with the government's consent. (*See* June 3, 2019 Minute Entry.) It was only after Defendant was remanded for violating a condition of his pre-sentence release in November 2019 (*see* Nov. 5, 2019 Order of Detention, Dkt. 36) that he first raised the possibility of seeking to withdraw his guilty plea. That decision prompted his initial attorneys to seek to withdraw as his counsel and prompted two additional rounds of appointed counsel to withdraw from the case, explicitly based on their determination that they could not ethically file the plea withdrawal motion that Defendant wanted to pursue. (Dkts. 42–45.) The fact that Defendant only sought to withdraw his guilty plea after he was remanded bolsters the conclusion that Defendant made a voluntary and strategic decision to plead guilty, at least in part to better his prospects for release on bail, but then regretted that decision when he was again remanded for alleged misconduct while on release.

Thus, both the amount of time that Defendant waited before moving to withdraw his guilty plea and the timing of that decision support the denial of his motion.

**B.    Defendant's Claim of Innocence**

"The purpose of considering legal innocence is to [e]nsure that the defendant's reason for withdrawing his plea is 'just' and not simply a recalculation of his chances of defeating the indictment." *United States v. Hudak*, No. 02-CR-853 (JFK), 2003 WL 22170606, at *3–5 (S.D.N.Y. Sept. 19, 2003) (alteration added); *see id.* (rejecting plea withdrawal because defendant's challenge to validity of search warrant impacts strength of tactical defense rather than legal innocence). Moreover, "[t]he self-inculpatory statements [defendant] made under oath at his plea allocution 'carry a strong presumption of verity,' and the court, in reviewing the belated claims of innocence, must draw all permissible inferences in favor of the government and against the defendant . . . ." *United States v. Maher*, 108 F.3d 1513, 1530 (2d Cir. 1997) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)) (finding that "the district court was . . . entitled to reject the newly advanced innocent explanations for [defendants'] behavior and to credit instead the evidence that had been presented at trial and in defendants' own earlier descriptions of their conduct"); *United States v. Wilson*, 828 F. Supp. 2d 679, 686 (S.D.N.Y. 2011) (holding that defendant's argument of legal innocence "founder[ed] because she admitted her culpability when she pled guilty" and nowhere contended that she made false statements during her plea allocution), *aff'd*, 523 F. App'x 30 (2d Cir. 2013) (summary order).

Here, Defendant's assertion of innocence is contradicted by all of his statements during the lengthy and detailed plea proceeding and, in particular, by his allocution to the elements of the extortion crime to which he pled guilty. Twice during the plea proceeding, the Court confirmed that Defendant understood "the nature of [the] charge to which the defendant [was] pleading," as

5

required by Fed. R. Crim. P. 11(b)(1)(G). (*See* Tr. at 8:20–9:18.) Defendant then allocuted to the elements of the extortion offense charged in Count Two of the Indictment under oath, with his attorney stipulating to two elements, neither of which Defendant disputes in this motion.[4] (*Id.* at 21:22–22:15.) At the conclusion of the plea proceeding, the Court found that Defendant's "allocution provides [] factual support for the essential elements of the offense to which he has pled guilty," and accepted his plea. (*Id.* at 24:12–14.)

Defendant's allocution alone weighs heavily against the Court's finding that his plea was not knowing. *See United States v. Carr*, 713 F. App'x 17, 18–19 (2d Cir. 2017) (summary order) (finding that the defendant understood the conspiracy charge against him, as evidenced by his plea agreement, which "contained a clear description of the charged conduct" and "clearly laid out the elements of the conspiracy charge" (internal quotation marks and citation omitted)); *Johnson v. United States*, No. 06-CR-10 (JS), 2018 WL 8335489, at *4 (E.D.N.Y. May 9, 2018) (listing several factors as indicative that defendant's guilty plea was knowing and voluntary); *Dixon v. United States*, No. 14-CV-1223 (JS), 2018 WL 910522, at *6 (E.D.N.Y. Feb. 14, 2018) (listing same factors as indicative that defendant's guilty plea and appeal waiver were both knowing and voluntary); *United States v. Piparo*, Nos. 16-CV-4990, 11-CR-18 (GBD), 2019 WL 3554261, at *8 (S.D.N.Y. Aug. 5, 2019) (deciding in § 2255 motion to vacate that defendant's ability to articulate the elements of the crimes charged in allocution rendered plea knowing and voluntary). *Cf. United States v. Coffin*, 713 F. App'x. 57, 59–60 (2d Cir. 2017) (summary order) (finding the record inadequate to establish that defendant "was sufficiently aware of each element of [the crime

---

[4] The Court clarified that Defendant was stipulating to the fact that the relationship meets the definition of a thing of value for the purposes of 18 U.S.C. § 875(d) and that Defendant's threat of sending pictures in exchange for that thing of value constitutes legal extortion. (Tr. at 22:7–12.)

to which he pleaded guilty]" because defendant disputed a key fact relevant to the crime throughout the proceedings); *United States v. Culbertson*, 670 F.3d 183, 190–91 (2d Cir. 2012) (finding error in the district court's finding that a factual basis exists where the defendant actively disputed an essential element of the charged crime).

Now, in his motion, Defendant alleges for the first time that since the day of his arrest he insisted to his lawyer that he was innocent and showed her evidence that the indictment was based on lies. (Def.'s Mot., Dkt. 46, at ECF[5] 1.) Although Defendant does not deny the truth or accuracy of his plea allocution in his written motion or supporting affidavit, in response to the Court's questions at oral argument, Defendant baldly asserted that everything he said during his allocution was false and that he had lied, under oath, at the plea proceeding about having committed the acts that made him guilty of the extortion offense. However, Defendant's conclusory claims of innocence without "reference to corroborating facts," *Gonzalez*, 647 F.3d at 54 (citation omitted), or the presentation of new evidence, cannot override the "strong presumption of verity" afforded to "the self-inculpatory statements [] made under oath at his plea allocution," *Maher*, 108 F.3d at 1530 (internal quotation marks and citation omitted). "'Wholly conclusory' 'claims of innocence' give 'no reason to disturb the strong presumption of verity that attaches to . . . admissions of guilt at a plea allocution[,]'" and "bald statement[s]" by a defendant that he is not guilty of the offense to which he pleaded guilty is not a sufficient ground to withdraw his plea. *United States v. Richards*, 764 F. App'x 35, 37 (2d Cir. 2019) (summary order) (alterations omitted) (additional citations omitted) (quoting *United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001)); *see also Gonzalez*, 647 F.3d at 54 ("A reference to corroborating facts—as opposed to a 'bald statement'

---

[5] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

of innocence—is essential if a court is to credit a defendant's present claims of innocence—sworn under oath—over his prior (and now contradicted) admissions of guilt under oath." (internal quotation marks and citation omitted)); *United States v. Deleon*, No. 13-CR-0811 (ALC), 2018 WL 6528492, at *7 (S.D.N.Y. Dec. 12, 2018) (finding that "mere repetition" of claims of actual innocence, without more, is insufficient to rise to the level of actual innocence); *United States v. Kolaczynski*, No. 16-CR-0834 (NSR), 2018 WL 377342, at *2 (S.D.N.Y. Jan. 10, 2018) (finding insufficient reason to grant defendant's withdrawal application because, in supporting affidavit, he merely contradicted sworn-to statements during plea allocution hearing and proffered no evidence in support of his claim). In *Maher*, the defendant similarly asserted in his motion to withdraw his plea that he "always has maintained his innocence," yet his "own allocution [] contradicted virtually every aspect of the explanation advanced in his motion." 108 F.3d at 1530 (internal quotation marks and citation omitted). There, the Circuit found that the district judge "was plainly entitled to reject the belated claims of innocence that contradicted [defendants'] credible pleas of guilt[.]" *Id.* Indeed, as discussed *infra*, this Court does not credit Defendant's statements at oral argument that his factual admissions during the plea proceeding that established his guilt to the charged crime were lies.

Another factor that weighs against permitting Defendant to withdraw his guilty plea is that the evidence he argues supports his innocence was available to him at the time of the guilty plea. Defendant claims to have shared with his attorney early on in this case taped conversations that prove his innocence and that are also in the government's possession. (Supporting Affidavit Accompanying the Motion to Withdraw ("Def.'s Aff."), Dkt. 46, at ECF 3.) When a defendant makes factual assertions of which he was well aware when he decided to enter a guilty plea, this "does not establish 'legal innocence' or provide an adequate reason to disturb his guilty plea" just

8

because the defendant may now be of the view that he might obtain a not-guilty verdict. *Albarran*, 943 F.3d at 123. Defendant makes no claim that this evidence is new and implies that it was available to him before entering his guilty plea. (Def.'s Mot., Dkt. 46, at ECF 1 ("In this case defendant from the very first day told his lawyer that he is innocent of all the charges and have [sic] evidence to prove it.").)

Accordingly, Defendant has failed to demonstrate that, contrary to his guilty plea, he is actually innocent of the crime to which he pled guilty.

C. **Voluntariness and Coercion**

In his motion, Defendant also alleges that his plea was not voluntary and "was the result of mental coercion overbearing the defendant's will." (*Id.*) More specifically, he states that "he was threatened by his lawyer and the prosecutor and mentally overpowered in pleading guilty" (*id.* at ECF 2) because the prosecutor threatened Defendant with fourteen years if he went to trial and his lawyer suggested he should take the plea to avoid this lengthy sentence, so he was "basically [coerced] and took the plea under duress to get out of prison because [he] was very stressed" (Def.'s Aff., Dkt. 46, at ECF 3).

A plea is "voluntary" if it is "not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *United States v. Gil-Guerrero*, 759 F. App'x 12, 17 (2d Cir. 2018) (summary order) (quoting *United States v. Juncal*, 245 F.3d 166, 172 (2d Cir. 2001)). "[S]worn testimony given during a plea colloquy 'carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made.'" *United States v. Rivernider*, 828 F.3d 91, 105 (2d Cir. 2016) (quoting *Juncal*, 245 F.3d at 171); *see also*

9

*United States v. Richards*, 764 F. App'x 35, 38 (2d Cir. 2019) (summary order) (affirming district court's finding that, given defendant's responses to the plea colloquy, he was not under duress because he "understood what was at stake when he pled guilty").

"[D]efense counsel's blunt rendering of an honest but negative assessment of appellant's chances at trial, combined with advice to enter the plea, [do not] constitute improper behavior or coercion that would suffice to invalidate a plea." *Juncal*, 245 F.3d at 172. Furthermore, conclusory allegations against defense counsel, such as those leveled by Defendant, must suggest that the attorney did "more than vigorously urge him to accept a plea agreement in a case that, in [her] legal opinion, was hopeless." *Gil-Guerrero*, 759 F. App'x at 17 (internal quotation marks and citation omitted).

Additionally, a plea agreement is not considered coercive when a prosecutor states "a true recital of the scenario that would play out should the defendant choose to proceed to trial." *Doe*, 537 F.3d at 212; *see also United States v. Scott*, 569 F. App'x 55, 57 (2d Cir. 2014) (summary order) ("[A]ny statement by an FBI agent that [defendant] would 'get 45 years' would have been an accurate description of the risk [defendant] would have taken in going to trial, and thus cannot provide the basis for withdrawing his guilty plea."). "[S]ignificant pressure to choose between two unfavorable options . . . does not rise to the level of coercion sufficient to render [a defendant's] guilty plea involuntary." *United States v. Lam Peralta*, 792 F. App'x 68, 69 (2d Cir. 2019) (summary order) (affirming the district court's finding that an attorney who "strongly expressed his view to [d]efendant that pleading guilty was his best option" does not constitute counseling that is coercive).

Here, Defendant's allegations of coercion by the prosecution and his attorney do not exceed what the Second Circuit has deemed non-coercive. Representations by Defendant's attorneys or

by the prosecution that he was facing fourteen years in prison if he went to trial were simply "a true recital of the scenario that would play out should the defendant choose to proceed to trial," *Doe*, 537 F.3d at 212, and although Defendant may have felt "significant pressure" to choose between "two unfavorable options," *Lam Peralta*, 792 F. App'x at 69, and now regrets doing so, the presentation of these options does not constitute coercion.

Regarding the advice she gave Defendant as to whether to plead guilty or go to trial, Ms. Eisner-Grynberg stated in her affidavit:

> Consistent with my standard practice in every case, when [Defendant] was presented with a plea offer, I discussed with him the statutory minimum and maximum, his guidelines range, and the possible and likely outcomes at sentencing upon a guilty plea. We discussed the difference in his exposure if convicted at trial, and my assessment of his likelihood of success on each count if he were to proceed at trial.[6]

(Eisner-Grynberg Aff., Dkt. 47, ¶ 3.) Ms. Eisner-Grynberg also stated that, "[w]hile I cannot recall the exact language of my advice to Mr. Farooq, the answers I provided to Your Honor's questions during Mr. Farooq's June 3, 2019 plea were accurate." (*Id*. ¶ 4; Tr. at 7:22–8:15 (defense counsel

---

[6] Although the Court permitted Ms. Eisner-Grynberg's affidavit to be filed *ex parte* in order to protect Defendant's attorney-client privilege, the Court deems Defendant to have waived that privilege to the extent relevant to this motion based on his extensive reliance on, and disclosure of, those communications in his motion. *See In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) ("This court has recognized that implied waiver may be found where the privilege holder asserts a claim that *in fairness* requires examination of protected communications . . . In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." (emphasis in original) (internal quotation marks and citations omitted)); *see also United States v. Caroleo*, No. 17-CR-177 (ENV), 2019 WL 5869690, at *1 (E.D.N.Y. Nov. 11, 2019) ("Ordinarily, the knowing disclosure of materials protected by the attorney-client privilege to someone other than the attorney representing that party would be a classic waiver of the privilege." (citation omitted)); *Nat'l Immigration Project of the Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec.*, 842 F. Supp. 2d 720, 728 (S.D.N.Y. 2012) ("[A] party can waive attorney-client privilege by making a deliberate decision to disclose privileged materials in a forum where disclosure was voluntary and calculated to benefit the disclosing party." (internal quotation marks and citation omitted)).

11

confirming during plea hearing that she had discussed the matter of pleading guilty with Defendant, that he understood his rights, that he was capable of understanding the nature of the proceedings and competent to plead guilty, that she had advised him of the statutory maximum and minimum sentence and fine and had discussed the effect of the Sentencing Guidelines with him, and that she knew of no reason why he should not plead guilty).)

Defendant's assertion that "his lawyer assured [him] that the plea deal is for time serve[d]" (Def.'s Mot., Dkt. 46, at ECF 1) is similarly belied by Ms. Eisner-Grynberg's affidavit, the plea agreement,[7] and the Court's advisements to Defendant at the plea proceeding, all of which he confirmed he understood. (Tr. at 14:11–15:20, 16:4–20:7 (advising Defendant of: the statutory maximum sentence of two years; the plea agreement's estimated Guidelines range of 41 to 51 months; the possibility that government's and defense's respective Guidelines estimates could be wrong; the lack of a guarantee as to what Guidelines range the Court will apply; the possibility of upward or downward departure from Guidelines range; his inability to retract his guilty plea if the Guidelines range or sentence imposed is different than what Defendant hopes for or expects).)

Furthermore, although Ms. Eisner-Grynberg confirms that she advised Defendant that he was unlikely to be released on bail if he did not plead guilty (Eisner-Grynberg Aff., Dkt. 47, ¶ 5), this advice does not amount to coercion. Rather, it was an opinion that Ms. Eisner-Grynberg as counsel could reasonably—or, arguably, was obligated to—provide Defendant. From there, Defendant was free to decide whether or not he wished to plead guilty in order to better his chances of obtaining bail. There is no evidence, and Defendant does not even offer any, that Ms. Eisner-Grynberg ever told, advised, or suggested to Defendant that he perjure himself during the plea

---

[7] Indeed, Defendant acknowledges in his motion that "even the plea agreement stated 2 years." (Def.'s Mot., Dkt. 46, at ECF 1.)

12

proceeding or otherwise falsely admit to engaging in conduct that he did not commit. Even though Defendant claimed at oral argument that he did, in fact, perjure himself at the plea proceeding when he admitted to conduct constituting extortion—which suggests that he did so at Ms. Eisner-Grynberg's direction—the Court does not credit this *post hoc* repudiation of his admissions.[8]

Rather, everything in the record other than Defendant's belated claim of coercion demonstrates that Defendant's guilty plea was not the product of any threat, duress, or undue or improper pressure by his attorney or the prosecution. At the guilty plea hearing, Defendant stated, *inter alia*, that he was making his plea of guilt knowingly and voluntarily, that no one had made him any promise that was not in his plea agreement, and that no one had threatened him in any way to compel him to accept the agreement. (Tr. at 13:20–14:3, 20:17–21:4.) Defendant affirmed that he understood his right to a trial and all the attendant rights as described to him by the Court, and that he was willing to give up his right to a trial and all of these other rights. (*Id.* at 10:1–12:21.) Defendant also confirmed that he had discussed with his attorney how the advisory guidelines might apply to his case, and that he was satisfied with the representation, counsel, and advice given to him by his attorney. (*Id.* at 9:19–25, 16:14–17.)

Based on the record in this matter and the Court's rejection of Defendant's claims of duress, coercion, and perjury, the Court finds that Defendant acted knowingly and voluntarily when he pled guilty and that he has truthfully admitted his guilt to the crime charged in Count Two of the Indictment.

---

[8] As the Court stated at the oral argument, this credibility determination is based on the Court's observation of Defendant and his statements during the oral argument, as well as the Court's numerous interactions with Defendant over the course of this case, which has included multiple, protracted bail hearings and attorney-substitution proceedings—during which Defendant was prone to impulsive and volatile outbursts.

### D. Prejudice to the Government

The prosecutor argues they would face prejudice should this motion be granted and this case permitted to proceed to trial. (*See* Gov't Resp., Dkt. 48, at 9–10.) Specifically, the government contends:

> As the Court may recall, the government initially requested that this case be designated complex due in part to the large number of foreign language documents that needed to be translated. Although the government was diligently preparing for trial in the matter, including spending significant resources in translating those documents, the government stopped those efforts following the defendant's guilty plea. Moreover, most of the witnesses in the case—including the victims named in the Complaint—do not live in the United States. It has been months since the plea was entered, and these witnesses have not only mentally and emotionally moved on, their memories of the events at issue in this case are also older. Indeed, requiring the victims to revisit these events, months after the defendant's guilty plea, could result in additional trauma to the victims. Should the Court grant the defendant's motion, the government would face the difficulties of having to reassemble its witnesses and prepare anew for trial more than a year after the underlying events, and will have to expend scarce and valuable resources on preparing for and conducting the trial.

(*Id.*)

Prejudice to the government is a factor the Court may consider, *see United States v. Rose*, 891 F.3d 82, 85 (2d Cir. 2018), although "the Government need demonstrate prejudice only if [the defendant] can present otherwise valid reasons for withdrawing his plea," *United States v. Cayce*, No. 04-CR-506 (LAP), 2010 WL 2106174, *15 (S.D.N.Y. May 19, 2010) (citing *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)). Here, even though Defendant has failed to present such valid reasons, the Court has considered the prejudice that would result to the government if Defendant were permitted to withdraw his guilty plea. The Court is mindful that withdrawal of the plea, at a minimum, would further traumatize the victims, who have already endured a rollercoaster of emotional turmoil and fear due to this case and Defendant's ongoing conduct. *See id.* at *15–16 ("The Government has at least twice arranged for witnesses to be present and testify

at [defendant's] trial and has twice cancelled those arrangements on [defendant]'s initiative. In addition to the time and resources spent by the Government in making these arrangements, the corresponding irritation caused to witnesses who would otherwise cooperate is prejudicial." (internal record citations omitted)).

Prejudice to the government is therefore another factor that weighs against allowing Defendant to withdraw his guilty plea.

### IV.     Conclusion

Defendant has failed to show a "fair and just" reason to permit the withdrawal of his guilty plea, as required by Rule 11 and the caselaw discussed *supra*. Given Defendant's allocution to all elements of the charged crime to which he pled guilty, coupled with his failure to proffer new information to dispel any of those elements, and his repeated confirmations at his plea hearing that his plea was given knowingly, voluntarily, and without coercion, which remain unrebutted, Defendant's motion to withdraw his guilty plea to Count Two of the Indictment is denied. This matter will proceed to sentencing.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 6, 2020
       Brooklyn, New York